IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DISCOVER PROPERTY & CASUALTY   )
INSURANCE CO.                             )
        Plaintiff,                    )
                                     )
        vs.                       )        Civil Action No. 05-1263
                                     )
ABBY RECOVERY AGENCY, INC. and   )
JOHN CARDENAS,                 )        Judge McVerry
        Defendants.           )        Magistrate Judge Mitchell
                                   )

REPORT AND RECOMMENDATION

I.     Recommendation

It is respectfully recommended that the motion to dismiss defendant John Cardenas's

Counterclaim, submitted on behalf of Plaintiff (Docket No. 9), be denied.

II.    Report

Plaintiff, Discover Property & Casualty Insurance Company ("Discover"), brings this

action seeking a declaratory judgment that it is not obligated to provide coverage to Defendant

Abby Recovery Agency, Inc. ("Abby Recovery") or Defendant John Cardenas ("Cardenas") with

respect to claims made by Cardenas for underinsured motorist ("UIM") benefits under a policy

issued to Abby Recovery by Discover.  Cardenas has filed a counterclaim, alleging that Discover

has acted in bad faith in violation of 42 Pa. C.S. § 8371.

Presently before this Court for disposition is a motion to dismiss Cardenas's

counterclaim, brought by the Plaintiff.  For the reasons that follow, the motion should be denied.

<u>Plaintiff's Allegations</u>

Discover issued Policy No. D100A00378 to Abby Recovery providing business auto insurance, including UIM benefits, for the period September 1, 2003 to September 1, 2004. (Am. Compl. ¶ 6.)  The relevant portions of the policy are as follows:

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle".  The damages must result from "bodily injury" sustained by the "insured" caused by an "accident".  The owner's or driver's liability for these damages must result from the ownership, maintenance or use of an "underinsured motor vehicle".

. . .

**B. Who is an Insured**

If the Named Insured is designated in the Declarations as:

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

a. Anyone "occupying" a covered "motor vehicle"...

. . .

**F. Additional Definitions**

2. "Occupying" means in, upon, getting in, on, out or off.

(Am. Compl. ¶ 7 & Ex. A at 30, 31, 33.)

Cardenas worked at all relevant times as a tow truck driver and recovery agent for Abby Recovery.  On the early morning of April 18, 2004, Cardenas drove the Abby Recovery tow truck to a debtor's residence to repossess the debtor's automobile, a Dodge Dakota pickup truck.  He attached the debtor's vehicle to his tow truck and began driving along Route 8.  Instead of taking

the vehicle directly to the impound lot, Cardenas pulled over onto the berm of the highway and

called the debtor to offer him the opportunity of removing his personal items from the vehicle.

He exited the tow truck, walked back to the debtor and stood behind him while the debtor

removed items from the vehicle.  (Am. Compl. ¶¶ 9-11, 13-14, 16-17, 21.)

While standing in the road and talking to the debtor, Cardenas saw a vehicle approaching

in the northbound lane at a high rate of speed.  He tried to get out of the way, but was unable to

avoid being stuck by the vehicle and sustained injuries, including fractures of the right tibia and

fibula and a torn rotator cuff.  (Am. Compl. ¶¶ 23-26.)

Cardenas settled a claim against the tortfeasor for $25,000.00, the limits of her policy

with Progressive Insurance Company.  He then requested UIM coverage from Discover under the

Abby Recovery policy.  (Am. Compl. ¶¶ 27-28.)

Cardenas's Allegations

Cardenas alleges that, on April 30, 2004, his counsel sent a letter to Jeff Hale of GAB

Robins North America, the third party claims administrator for Discover, requesting a copy of the

declaration page for the policy in effect with Abby Recovery.  (Answer & Countercl. ¶¶ 50-52 &

Ex. C.)  On June 23, 2004, his counsel sent a letter enclosing his medical records.  (Answer &

Countercl. ¶ 58 & Ex. I.)

On July 16, 2004, his counsel sent another letter again requesting the declaration page as

well as a complete copy of the policy in effect on April 18, 2004, including any and all UIM

provisions.  (Answer & Countercl. ¶ 53 & Ex. D.)  On July 20, 2004, his counsel sent a letter

advising Hale that Progressive Insurance Company, the insurer for the tortfeasor, had offered its

liability policy limits of $25,000.00.  Counsel requested that Discover provide a waiver of

subrogation and consent to settle the liability claim and also demanded a tender of the UIM

benefits.  (Answer & Countercl. ¶¶ 54 & Ex. E.)  Counsel sent additional letters to the same

effect on July 29, 2004 and August 31, 2004.  (Answer & Countercl. ¶¶ 55, 57 & Exs. F, H.)  On

September 16, 2004, Hale sent a letter stating that he was enclosing a complete copy of the policy

and declaration pages, but the copy was missing every other page and the missing pages

contained the arbitration clause for the UIM policy as well as the definitions clause regarding the

term "occupying."  (Answer & Countercl. ¶ 56 & Ex. G.)

On October 5, 2004, Cardenas's counsel sent Hale a letter reiterating the requests, asking

Hale to evaluate the case with the additional medical records that were enclosed, and advising

Hale that Cardenas's medical bills were then $78,182.38, his wage losses were in excess of

$23,400.00 and that he had suffered a life-disabling injury and would never be able to return to

his previous level of work.  The letter suggested that Hale send a check for the undisputed value

of the case after which the parties could arbitrate any remaining amount due from the policy

limits.  (Answer & Countercl. ¶ 58 & Ex. J.)

On October 14, 2004, Hale wrote that Discover was reserving its right to deny coverage

because of two specific issues:

> First, we have no proof that the wrecker involved in this incident was an insured
> vehicle on the business auto policy.  The police report does not identify the
> wrecker and, so, we cannot verify that it was a scheduled and insured vehicle
> under the policy.  If you have any evidence to offer on this point, please provide it
> to us.
>
> Second, in order for the UM [sic] coverage endorsement to apply, the claimant
> must be "occupying" an insured vehicle at the time of the accident.  We are
> hereby reserving our right to deny coverage as Mr. Cardenas was not "Occupying"
> an insured vehicle as that term is defined in the policy.

(Answer & Countercl. ¶ 59 & Ex. K.)  On October 19, 2004, Cardenas's counsel sent a letter to

Hale advising him that a bad faith lawsuit would be filed based on Discover's failure to waive

subrogation, consent to settle or tender a check in the amount of $25,000.00 as a substitute for

the policy limits of Progressive Insurance Company and reservation of rights to deny coverage

because the police report specifically identified the vehicle and Cardenas was "occupying" it on

the date of the accident.  (Answer & Countercl. ¶ 60 & Ex. L.)  On October 27, 2004, Hale sent a

fax to Cardenas's counsel stating that Discover had agreed to waive subrogation.  (Answer &

Countercl. ¶ 61 & Ex. M.)

On January 31, 2005, Cardenas's counsel sent a letter enclosing updated medical records

and advising Hale that Cardenas had not returned to work and that a return in the future was very

uncertain and again requesting that he evaluate the case and tender a check in the amount of the

undisputed portion. (Answer & Countercl. ¶ 62 & Ex. N.)  On February 25, 2005, Hale sent a

letter requesting information as to whether Cardenas owned his own vehicle and if he had "any

uninsured [sic] motorist coverage with that vehicle."  (Answer & Countercl. ¶ 63 & Ex. O.)  On

February 28, 2005, Hale told Cardenas's counsel he needed a letter stating that Cardenas's own

vehicle insurance was secondary to the tow truck's insurance and reported that he had submitted

the matter of paying the undisputed amount to his superiors.  (Answer & Countercl. ¶ 64.)  On

March 7, 2005, Cardenas's counsel wrote that Cardenas did have UIM coverage but that the

primary coverage was the Abby Recovery policy.  The letter also included updated medical

records and reported that Cardenas was to have knee surgery on March 15, 2005.  (Answer &

Countercl. ¶ 65 & Ex. P.)

On August 23, 2005, Cardenas's counsel wrote a letter nominating an arbitrator and

requesting that Discover appoint an arbitrator within thirty days.  (Answer & Countercl. ¶ 66 &

Ex. Q.)  On September 2, 2005, Cardenas's counsel against sent a letter requesting a complete copy of the policy, a tender of the policy limits or Discover's undisputed valuation of the claim and the appointment of an arbitrator.  (Answer & Countercl. ¶ 67& Ex. R.)

On September 14, 2005, Cardenas's counsel received a call from Discover's counsel advising that Discover had filed a declaratory judgment action against Abby Recovery.  (Answer & Countercl. ¶ 68.)  On September 15, 2005, Cardenas's counsel sent a letter requesting a complete copy of the policy, a tender of the policy limits or the undisputed portion thereof and an explanation as to why Cardenas was not included in the declaratory judgment action.  (Answer & Countercl. ¶ 69 & Ex. S.)  On September 16, 2005, counsel received a complete copy of the UIM provisions as well as a copy of the complaint.  (Answer & Countercl. ¶ 70 & Ex. T.)

Procedural History

Plaintiff filed this action on September 12, 2005 against Abby Recovery and on September 22, 2005, it filed an amended complaint adding Cardenas as a defendant.  Plaintiff asserts jurisdiction on the basis of diversity of citizenship in that Discover is an Illinois insurance company with its principal place of business in St. Paul, Minnesota; Abby Recovery is a Pennsylvania corporation with its principal place of business in North Versailles, Pennsylvania; Cardenas is a citizen of Pennsylvania; and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.  The complaint requests a declaratory judgment that Discover does not owe a duty to indemnify Abby Recovery in connection with the claims made by Cardenas and that it is not obligated to provide coverage because Cardenas was not "occupying" the Abby Recovery vehicle under the policy at the time of the accident.

On December 8, 2005, Cardenas filed an answer and counterclaim.[1]  The counterclaim

asserts jurisdiction on the basis of diversity of citizenship.  Cardenas alleges that Discover acted

in bad faith in numerous ways, including denying the claim without a reasonable basis, failing to

conduct a timely and reasonable investigation, misrepresenting that the vehicle was not a covered

vehicle when it had clear proof that it was in fact a covered vehicle, delaying filing a declaratory

judgment action for seventeen months after the accident and intentionally failing to include

Cardenas in the action, failing to provide a complete copy of the policy on a timely basis, failing

to respond to the demand for arbitration, retaining an incompetent third party administrator, and

failing to provide consent to settle and waive subrogation of the underlying third party action.

(Answer & Countercl. ¶ 74.)[2]

On January 17, 2006, Discover filed both an answer to the counterclaim (Docket No. 8)

and a motion to dismiss it (Docket No. 9).  The motion to dismiss argues that Cardenas's claim

for bad faith is not ripe for review and/or that it fails to state a claim upon which relief can be

granted.  The ripeness issue will be addressed first.

Motion to Dismiss Based on Failure of Ripeness

The Court of Appeals has stated that:

---

[1]      Abby Recovery has not filed a response to the complaint or the amended complaint.

[2]      The counterclaim also appears to seek a declaration that the Abby Recovery policy provides at least $1,000,000.00 in UIM benefits and to allege that Cardenas is entitled to UIM benefits because he was occupying a covered motor vehicle owned by his employer at the time of the accident and his damages exceed the $25,000.00 limits of the tortfeasor's policy.  (Answer & Countercl. ¶¶ 45-47.)  However, the counterclaim goes on to state that "[i]t is not [Cardenas's] contention that the underlying personal injury claim should be decided in this Court proceeding. The underlying personal injury claim should be decided in Arbitration."  (Answer & Countercl. ¶ 72.)  In addition, in their briefs, both Discover and Cardenas treat the counterclaim as if it alleged only a claim of bad faith.  (Docket No. 10 at 4-5; Docket No. 14 at 7-15.)

"The existence of a case and controversy is a prerequisite to all federal actions...." Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1462 (3d Cir. 1994). "In some circumstances the ripeness requirement is drawn from Article III limitations on judicial power and in others from prudential limitations." NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 341 (3d Cir. 2001). The function of the ripeness doctrine is to determine whether a party has brought an action prematurely, Philadelphia Federation of Teachers, American Federation of Teachers, Local 3, AFL-CIO v. Ridge, 150 F.3d 319, 323 (3d Cir. 1998), and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.

The following considerations underpin the ripeness doctrine: are the parties in a sufficiently adversarial posture to be able to present their positions vigorously; are the facts of the case sufficiently developed to provide the court with enough information on which to decide the matter conclusively; and is a party genuinely aggrieved so as to avoid expenditure of judicial resources on matters which have caused harm to no one. See Erwin Chemerinsky, Federal Jurisdiction § 2.3.1 (1989).

Accordingly, the ripeness doctrine requires that the challenge grow out of a "real, substantial controversy between parties" involving a "dispute definite and concrete." Babbitt v. United Farm Workers National Union, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (citation omitted). The question in each case is whether the facts alleged show that there is a substantial controversy, between parties having adverse legal interests, "of sufficient immediacy and reality" to justify judicial resolution. Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). The Supreme Court ... incorporated the foregoing considerations into a two-step test for determining ripeness, which looks at: (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration."

Peachlum v. City of York, Pa., 333 F.3d 429, 433 (3d Cir. 2003) (citing Abbott Labs. v. Gardner,

387 U.S. 136, 148- 49 (1967)).

Discover has not demonstrated that Cardenas's counterclaim fails these standards.

Cardenas has not acted prematurely, but has brought a claim that is sufficiently concrete to satisfy

the constitutional and prudential requirements of the ripeness doctrine.  Discover has not argued,

much less demonstrated, that the parties are not in a sufficiently adversarial posture to be able to

present their positions vigorously, that the facts of the case are not sufficiently developed to provide the Court with enough information on which to decide the matter conclusively, or that Cardenas has not been genuinely aggrieved by its actions.

Rather, Discover argues that the counterclaim is not ripe for adjudication because it has not denied Cardenas's request for UIM benefits but has only reserved its right to deny the request and filed a declaratory judgment action to have the Court determine the issue. Moreover, Discover argues that a denial of an insurance claim is a prerequisite to a cause of action for bad faith under § 8371. However, its citations do not support its arguments.

The only case that it cites that discusses the issue of ripeness is Allstate Insurance Co. v. Kenney, 2003 WL 22345683 (E.D. Pa. Oct. 8, 2003). In that case, Allstate filed a declaratory judgment action seeking a determination that it had no duty to defend Maura Kenney or her son Zachary in a state court action arising out of Zachary's alleged assault of another minor. The Kenneys filed a counterclaim alleging bad faith and breach of the insurance policy. They alleged that they suffered harm because the state court action had been stayed and because Allstate was refusing to engage in settlement negotiations regarding the state court action while the federal action was pending.

The court noted that Allstate's filing of a declaratory judgment action did not constitute an announcement that it was refusing to defend or indemnify the Kenneys in the state court action, but was merely a vehicle to have the court determine whether Allstate would be breaching its contract with the Kenneys if it did not defend or indemnify them. The court held that, because Allstate had provided the Kenneys with counsel in the state court action, it could not have breached its duty to defend. Moreover, because the state court action was held in suspense by

agreement of the parties, the issue of whether Allstate had a duty to indemnify the Kenneys had

not yet arisen.

With respect to the bad faith claim, the court stated as follows:

> As noted above, because Allstate has provided counsel and no adverse
> judgment has been entered upon which Allstate has refused to indemnify the
> Kenneys, plaintiff-on-the-counterclaim cannot show under the facts pled in their
> counterclaims that Allstate denied benefits under the insurance contract.  Because
> as of this time, Allstate has not denied benefits under the insurance policy to the
> Kenney defendants, we conclude that the parties are not adverse.
>
> This issue would be ripe for our review if Allstate had already failed to
> defend or indemnify the Kenneys in the state court action.  However, by our
> separate Order and Opinion of this date granting Allstate's motion for summary
> judgment, we determined that Allstate, as a matter of fact and law, is not under an
> obligation to do so.  Therefore, Allstate has not breached any of the Kenneys'
> legal or contractual rights.

Id. at *3.

Thus, the case is distinguishable from this one on the following grounds: 1) despite the

discussion of ripeness, the court dismissed the counterclaim by concluding that the insured could

not state a claim upon which relief could be granted because it had already held that the insurer

was entitled to summary judgment; 2) the determination of whether the issues were ripe for

review depended in part on the status of an underlying case in which the liability of the insured

had not yet been established; and 3) the insureds' primary claim was that they had been harmed

by the filing of the declaratory judgment action.  The case does not stand for the broad

proposition that claims for breach of an insurance policy or bad faith are not ripe until an insurer

issues a formal "denial" of a claim.

Discover repeatedly cites the Kenny court's statement that "it is better for an insurance

company to seek a declaratory judgment regarding its obligations under an insurance contract

than for the insurance company to simply deny benefits to the insured." Id. at *3 n.6 (citing

Stidham v. The Millvale Sportsmen's Club, 618 A.2d 945, 954 (Pa. Super. 1992)).  In the

Stidham case, Robert McLaughlin shot Brett Stidham in a bar and sought coverage when he was

sued by Stidham's estate.  The case concerned the insurer's duty to defend, not to indemnify, and

this turned on whether McLaughlin had acted intentionally.  The court noted that

> A declaratory judgment action, though not specifically required by law, might
> have resolved at the outset the question of Aetna's duty to defend.  Until the issue
> of McLaughlin's intent was resolved, however, Aetna had a duty to provide a
> defense for its insured.  In addition, a declaratory judgment action would have
> provided a forum for all persons asserting claims on the issue of coverage between
> the insured and his insurance carrier.

Id.

Thus, Stidham does not stand for the proposition that it is always better for an insurer to

file a declaratory judgment action than to deny benefits, particularly outside the context in which

both the duty to defend and the duty to indemnify are presented.  Nor does Kenny (which also

involved a duty to defend) suggest this broader reading of Stidham.  The motion to dismiss on

the ground of ripeness should be denied.

Motion to Dismiss for Failure to State a Claim

A motion to dismiss under Rule 12(b)(6)[3] must be viewed in the light most favorable to

plaintiff and all well-pleaded allegations of the complaint must be accepted as true.  Neitzke v.

Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976).  The motion cannot be

granted unless the court is satisfied "that no relief could be granted under any set of facts that

---

[3]     Technically, Plaintiff's motion should be called a motion for judgment on the pleadings
under Rule 12(c) because Discover already filed an answer to Cardenas's counterclaim.  Turbe v.
Government of the Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).  However, the standard of
review is the same.  See Green v. Fund Asset Mgmt., L.P., 245 F.3d 214, 220 (3d Cir. 2001).

could be proved consistent with the allegations." <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73

(1984).  <u>See also</u> <u>National Org. for Women, Inc. v. Scheidler</u>, 510 U.S. 249 (1994).  The issue is

not whether the plaintiff will prevail at the end but only whether he should be entitled to offer

evidence to support his claim.  <u>Williams</u>, 490 U.S. at 323; <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236

(1974).  The Court of Appeals has stated that:

> To decide a motion to dismiss, courts generally consider only the allegations
> contained in the complaint, exhibits attached to the complaint and matters of
> public record.... [In addition,] a court may consider an undisputedly authentic
> document that a defendant attaches as an exhibit to a motion to dismiss if the
> plaintiff's claims are based on the document.

<u>Pension Benefit Guaranty Corp. v. White Consolidated Indus.</u>, 998 F.2d 1192, 1196 (3d Cir.

1993) (citations omitted).  Thus, the policy, which is attached to the Complaint, may be

considered without converting the motion into a motion for summary judgment.

Discover contends that Cardenas cannot state a cause of action for bad faith until such

time as it denies his claim for benefits.  Cardenas responds that: 1) bad faith encompasses a broad

range of conduct and is not limited solely to denials of coverage; 2) a bad faith claim can exist

even when the underlying claim for benefits is paid, settled or dismissed; 3) Discover's acts

amount to a de facto denial of coverage; and 4) Discover delayed filing its declaratory judgment

action for seventeen months from the date of the accident and over one year after it had all of the

information necessary to decide whether a denial was justified, and then failed to include

Cardenas in its suit, which are themselves acts of bad faith.

A bad faith claim is distinct from the underlying contractual insurance claims from which

the dispute arose.  <u>Nealy v. State Farm Mut. Auto. Ins. Co.</u>, 695 A.2d 790, 792 (Pa. Super. 1997),

<u>appeal denied</u>, 717 A.2d 1028 (Pa. 1998).  Discover cites a recent case in which the Court of

Appeals stated that "[a]lthough the alleged bad faith need not be limited to the literal act of denying a claim, the essence of a bad faith claim must be the unreasonable and intentional (or reckless) denial of benefits." UPMC Health Sys. v. Metropolitan Life Ins. Co., 391 F.3d 497, 506 (3d Cir. 2004) (citations omitted). However, in that case, the insurer's acts merely extracted a higher premium from UPMC, and did not involve the denial of a claim. Thus, UPMC could not state a claim under § 8371. The Court of Appeals did not hold that an insurer can avoid a bad faith suit by reserving its rights indefinitely and engaging in repeated acts of delay, refusal to respond and questionable claims practices.

On the contrary, the Court of Appeals has recognized that "bad faith is actionable regardless of whether it occurs before, during or after litigation.... [Moreover], using litigation in a bad faith effort to evade a duty owed under a policy would be actionable under Section 8371." W.V. Realty, Inc. v. Northern Ins. Co., 334 F.3d 306, 313 (3d Cir. 2003) (citing O'Donnell v. Allstate Ins. Co., 734 A.2d 901, 906, 908 (Pa. Super. 1999)).

Discover also cites several cases concerning the statute of limitations to support the argument that Cardenas's bad faith claim has not yet accrued. For example, in Simon Wrecking Co. v. AIU Insurance Co., 350 F. Supp. 2d 624 (E.D. Pa. 2004), three insurance companies argued that the bad faith claims against them were barred by the running of the two-year statute of limitations. The court held that the two insurers who issued a denial of coverage gave Simon notice and began running the clock for statute of limitations purposes. However, the third insurer (CNA) issued a reservation of rights letter and did not commit an act of bad faith and therefore the claim was not barred. Id. at 631-32 (citing Adamski v. Allstate Ins. Co., 738 A.2d 1033, 1038, 1040 (Pa. Super. 1999)). The court noted that:

> In theory, at some point, the failure of the insurer to complete a claim investigation and/or provide coverage puts the insured on notice that the insurer has denied coverage.  However, because the merits of Simon's bad faith claim are not currently before me, I cannot decide whether Simon fails to allege denial of benefits, an element of a bad faith claim under Third Circuit law.  Nor can I decide at what point a failure to provide coverage might constitute a denial of coverage because that would require findings of facts, e.g., how long a claims investigation should take, which are not before me.

Id. at 632 n.7 (citing UPMC Health Sys, 391 F.3d at 505).

Thus, the Simon case concerns claims that are brought too late, not ones that are brought prematurely.  See also Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 224-25 (3d Cir. 2005) (following Adamski and other Pennsylvania cases holding that statute of limitations for § 8371 accrues at time of initial denial of coverage, and rejecting the argument that each bad faith act is not to be considered separately).  Moreover, even the Simon court recognized that an insurer cannot merely "reserve" its rights indefinitely.[4]

Finally, the court in Simon noted that the determination of how long a claims investigation should take depends upon findings of fact, which were not yet developed in that case.  Needless to say, no findings of fact have yet been developed in this case.  The Court cannot determine on the state of the record whether Discover's actions amount to a de facto denial of coverage.

The record does demonstrate that Discover reserved its right to indemnify Cardenas on October 14, 2004, but did not include Cardenas in its declaratory judgment action until September 22, 2005, nearly one year later.  This fact undermines Discover's position that it

---

[4]     Indeed, under the facts of the case CNA never formally denied benefits but continued to request information from Simon.  350 F. Supp. 2d at 630.  Pursuant to Discover's understanding of the law, the court should have dismissed the action as to CNA as unripe.

merely filed a declaratory judgment action to have the Court determine the scope of the policy

coverage and may support Cardenas's position that the filing of the case itself was a further act of

bad faith by Discover.

Cardenas also argues that an insured is permitted to make reference to the provisions of

the Pennsylvania Unfair Insurance Practices Act (UIPA) when alleging a claim of bad faith under

§ 8371.  The Pennsylvania Superior Court has stated that "the rules of statutory construction

permit a trial court to consider, either sua sponte or upon the request of a party, the alleged

conduct constituting violations of the UIPA or the regulations in determining whether an insurer

... acted in 'bad faith.'"  Romano v.  Nationwide Mut. Fire Ins. Co., 646 A.2d 1228, 1233 (Pa.

Super. 1994) (citations omitted).

> The UIPA prohibits, inter alia, the following acts by an insurer:
>
> Failing to acknowledge and act promptly upon written or oral communications
> with respect to claims arising under insurance policies.
>
> Failing to adopt and implement reasonable standards for the prompt investigation of
> claims arising under insurance policies.
>
> Refusing to pay claims without conducting a reasonable investigation based upon all
> available information.
>
> Failing to affirm or deny coverage of claims within a reasonable time after proof
> of loss statements have been completed and communicated to the company or its
> representative.

40 P.S. § 1171.5(a)(10)(ii-v).

The Pennsylvania Administrative Code, in its section on Unfair Claims Settlement

Practices (UCSP), requires that, within 10 days of being notified of a claim, every insurer shall

provide all necessary claim forms, instructions and reasonable assistance.  31 Pa. Code

§ 146.5(d).  The UCSP further provides that every insure shall complete its investigation of a

claim within 30 days of notification unless it cannot be completed within such time, in which case, the insurer shall, within 30 days and every 45 days thereafter, provide the claimant with a reasonable explanation for the delay and state when a decision on the claim may be expected. 31 Pa. Code § 146.6. Finally, the UCSP provides that, within 15 days of receipt of a properly executed proof of loss, an insurer should notify the claimant that the loss has been accepted or denied, that if the insurer needs more time it should so notify the claimant and continue to notify the claimant 30 days from the initial notification and every 45 days thereafter of its reasons for requiring additional time. 31 Pa. Code § 146.7(a)(1), (c)(1).

Although failing to comply with these standards is not per se evidence of bad faith, Cardenas may refer to them to support his case. Moreover, the standards further undermine Discover's contention that it could reserve its rights to deny coverage indefinitely, continue to request information and not respond to Cardenas's repeated requests for information and for acceptance or denial of his claim.

Discover's repeated acts of delay (e.g., in sending a complete copy of the policy, in filing the declaratory judgment action), refusal to respond to Cardenas's requests to waive its right of subrogation and consent to settle and apparent reliance upon spurious reasons to delay and fail to respond to the claim (e.g., the lack of a vehicle number on the police report) are sufficient for Cardenas to state a claim under § 8371. Therefore, the motion to dismiss for failure to state a claim should be denied.

For these reasons, it is recommended that the motion to dismiss defendant John Cardenas's Counterclaim, submitted on behalf of Plaintiff (Docket No. 9), be denied.

Within ten (10) days of being served with a copy, any party may serve and file written

objections to this Report and Recommendation.  Any party opposing the objections shall have

seven (7) days from the date of service of objections to respond thereto.  Failure to file timely

objections may constitute a waiver of any appellate rights.

                                      Respectfully submitted,


                                      s/Robert C. Mitchell
                                      ROBERT C. MITCHELL
                                      United States Magistrate Judge


Dated: March 1, 2006